```
               IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF NEBRASKA
```

| | | |
|---|---|---|
| ROGER WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | 7:05CV5018 |
| | ) | |
| v. | ) | |
| | ) | |
| SCOTTS BLUFF, COUNTY OF, and | ) | MEMORANDUM AND ORDER |
| JASON PERKINS, | ) | |
| | ) | |
| Defendants. | ) | |

The defendants have filed a "Rule 12(b)(6) motion" which includes requests to dismiss certain claims raised or encompassed within the allegations of the plaintiff's complaint, and also requests that certain allegations be stricken, and more definite and certain allegations be made as to other claims. See filing 7. Specifically, the defendants request:

- Dismissal of plaintiff's damage claim under 42 U.S.C. § 1983 brought against the County of Scotts Bluff and Deputy Jason Perkins in his official capacity because: a) the county is not a "person" for the purposes of 42 U.S.C. § 1983, and b) such claims are barred by the Eleventh Amendment.

- Dismissal of state law claims for injuries arising from an alleged physical assault because the plaintiff has failed to allege compliance with the Nebraska Political Subdivision Tort Claims Act.

- An order requiring the plaintiff to more definitely and certainly allege the basis of his substantive due process claim.

- An order striking or requiring a more definite and certain statement as to the equitable relief the plaintiff requests.

- An order striking the allegations in paragraph 29 of the plaintiff's Complaint seeking recovery of damages for "sociological distress" and "special damages

>             associated with defending criminal charges" as lacking
>             any legal basis for recovery; and any allegations
>             concerning a "deadly force" violation as lacking any
>             basis in fact.

For the reasons discussed herein, to the extent such claims are supported by the allegations in the plaintiff's complaint, I shall dismiss any claims based upon state law theories of recovery.  I shall deny the defendants' motion to dismiss the § 1983 claims alleged against Scotts Bluff County, and grant the motion to dismiss Perkins in his official capacity.  I shall grant the defendants' request for an order requiring the plaintiff to sufficiently allege his Fifth and Fourteenth Amendment substantive due process claims.  I shall strike plaintiff's claim for appropriate "equitable relief."  However, and I shall not strike plaintiff's damage claims for "sociological distress" and "special damages associated with defending criminal charges," nor the complaint's references to "deadly force."

## STANDARD OF REVIEW

Pursuant to Rule 12(b)(6), "a motion to dismiss a complaint should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief."  Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986).  In resolving such motions, all well-pleaded allegations in the complaint must be taken as true.  Furthermore, the complaint and all reasonable inferences arising therefrom must be weighed in favor of the plaintiff.  Morton, 793 F.2d at 187.

## THE COMPLAINT

The plaintiff's complaint alleges he was involved in a verbal dispute with another individual on August 21, 2004,[1] and claims defendant Jason Perkins, while employed as a deputy sheriff for Scotts Bluff County, used excessive force when responding to that dispute.  The plaintiff claims Perkins, acting in both his individual capacity and in his official capacity for the Scotts Bluff Sheriff's Department, violated the plaintiff's Fourth, Fifth, and Fourteenth Amendment rights when he physically assaulted and injured the plaintiff.

The plaintiff claims his injuries were caused by the failure of the Scotts Bluff Sheriff's Department to "properly hire, supervise, train, discipline and control deputy sheriffs under its command, including PERKINS, and its failure to promulgate and insure compliance with the laws, rules, and regulations regarding the use of excessive force."  Filing 1 (complaint) at ¶ 15.  He claims Scotts Bluff County "established through tacit authorization and explicit instruction a policy or custom of allowing deputy sheriffs to commit uses of excessive force," and this policy "was enacted and enforced with deliberate indifference to the constitutional rights of citizens effected thereby."  Filing 1 (complaint) at ¶ 10.  He further claims Perkins, "acting within the course and scope of his employment and under color of state law, acted with deliberate and unreasonable conduct in effectuation of Plaintiff's seizure,

---

[1]Paragraph 18 of the complaint states the incident occurred on August 21, 2004, while paragraph 3 states it occurred on August 21, 2005.  The plaintiff's complaint was filed on August 18, 2005.  I therefore conclude that the incident must have occurred in 2004, not 2005, and the reference to 2005 in paragraph 3 is a typographical error.

3

causing physical trauma" to the plaintiff. Filing 1 (complaint) at ¶ 21.

The plaintiff seeks damages for his physical injuries, physical and mental pain and suffering, humiliation and "sociological distress," "special damages associated with defending criminal charges" pursued by the defendants, punitive damages, costs, attorney fees, "and such other and further relief as this Court deems equitable and proper." Filing 1 (complaint) at ¶ 29. The plaintiff's prayer for relief likewise requests damages, punitive damages, attorneys fees and costs, and equitable relief.

## LEGAL ANALYSIS

1. Eleventh Amendment

The Eleventh Amendment deprives the federal courts of jurisdiction to "decide certain claims against States that otherwise would be within the scope of Art. III's grant of jurisdiction." Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 119-120 (1984). To the extent the plaintiff asserts federal claims against state officials under 42 U.S.C. § 1983, "the federal court is barred from awarding damages against the state treasury even though the claim arises under the Constitution." Id.; Poor Bear v. Nesbitt, 300 F. Supp. 2d 904, 914 (D. Neb. 2004)(Kopf, J.)(citing Atascadero State Hosp. v. Scanlon, 473 U.S. 234 (1985); Kentucky v. Graham, 473 U.S. 159 (1985); Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89 (1984)).

4

The plaintiff's complaint seeks recovery of retrospective monetary relief (damages) from Scotts Bluff County and Jason Perkins, acting individually and in his official capacity for the county, for an alleged violation of plaintiff's constitutional rights. A suit against a public employee in his official capacity is a suit against the public employer. Kentucky v. Graham, 473 U.S. 159, 165 (1985). Therefore, defendant Scotts Bluff County and defendant Perkins acting in his official capacity are one and the same for the purposes of Eleventh Amendment analysis. Treleven v. University of Minnesota, 73 F.3d 816, 818 (8th Cir. 1996). Damages cannot be recovered from Perkins in his official capacity, and plaintiff's official capacity claim against Perkins for damages will be dismissed. Treleven, 73 F.3d at 818.

Scotts Bluff County claims it is a "state defendant" and therefore any damage claim against it is barred by the Eleventh Amendment; the plaintiff claims the county is not an "arm of the state" and is therefore not entitled to the protection of the Eleventh Amendment. Therefore, the threshold question is whether the Scotts Bluff County is a "state defendant." I conclude it is not.

A suit against a county governmental unit is not regarded as a suit against a state within the meaning of the Eleventh Amendment. Gilliam v. City of Omaha, 524 F.2d 1013, 1015 (8th Cir. 1975). "[T]he Court has consistently refused to construe the [Eleventh] Amendment to afford protection to political subdivisions such as counties and municipalities, even though such entities exercise a 'slice of state power.'" Lake Country Estates, Inc. v. Tahoe Regional Planning Agency, 440 U.S. 391, 401 (1979). "Unless a political subdivision of a state is simply

5

'the arm or alter ego of the state,'. . . it may sue or be sued pursuant to the same rules as any other corporation." Gilliam, 524 F.2d at 1015 (citing Moor v. County of Alameda, 411 U.S. 693, 717-19 (1973); Illinois v. City of Milwaukee, 406 U.S. 91, 97 (1972); and State Highway Comm'n of Wyoming v. Utah Construction Co., 278 U.S. 194, 199 (1929)).  However, the Eleventh Amendment does bar recovery from county officials if the state will ultimately be responsible for paying the judgment; that is, if a judgment holding the county liable will have essentially the same practical consequences as a judgment against the State itself. Lake Country Estates, 440 U.S. at 401.

Each county established under Nebraska law is a body politic and corporate that may sue and be sued in any court having jurisdiction over the subject matter.  Neb. Rev. Stat. § 23-101. Whenever a money judgment is entered against a Nebraska county, the county board must "make provision for the prompt payment of the same."  Neb. Rev. Stat. § 77-1619.  If the amount of revenue derived from taxes levied and collected by the county for ordinary purposes is insufficient to pay a judgment entered against the county, the county must "at once proceed and levy and collect a sufficient amount of money to pay off and discharge such judgments."  Neb. Rev. Stat. § 77-1620.  If the county authorities responsible for levying and collecting the tax necessary to pay off any judgment "fail, refuse, or neglect to make provision for the immediate payment of such judgments,. . . such officers shall become personally liable to pay such judgments. . . ."  Neb. Rev. Stat. § 77-1623.

Under Nebraska statutory law, Scotts Bluff County must pay any judgment rendered against it.  Even if it fails to make this payment, its county officials, not the state, are liable for the

6

judgment.  The State of Nebraska is not responsible for payment of judgments entered against Scotts Bluff County, and the state is therefore not the real party of interest for purposes of determining Eleventh Amendment immunity.  Accordingly, plaintiff's suit against defendant Scotts Bluff County (and Jason Perkins acting in his official capacity) is not barred by the Eleventh Amendment.  Gilliam, 524 F.2d at 1015 (citing Edelman v. Jordan, 415 U.S. 651 (1974) and holding that, under Nebraska's analogous statutes pertaining to cities, the City of Omaha was not an "arm or alter ego of the state" and could not claim Eleventh Amendment immunity).

    2.   The Status of Scotts Bluff County as a "Person" under 42 U.S.C. § 1983.

Scotts Bluff County claims plaintiff's suit against it must be dismissed because it is not a "person" for the purposes of 42 U.S.C. § 1983.  A cause of action under 42 U.S.C. § 1983 lies where any person acting "under color of any statute, ordinance, regulation, custom , or usage, of any State or Territory" deprives another of any "rights, privileges, or immunities secured by the Constitution and laws."  42 U.S.C. § 1983 (1994). A plaintiff seeking recovery under § 1983 must allege: (1) some person deprived the plaintiff of a federal right; and (2) that person acted under the color of state or territorial law.  Gomez v. Toledo, 446 U.S. 635, 640 (1980).

Local governing bodies, such as counties, are "persons" for the purpose of Section 1983.  Monell v. Department of Social Services, 436 U.S. 658, 690 (1978).  However, the liability of local governments may not be based on respondeat superior. Monell, 436 U.S. at 690.  To the extent that a plaintiff's claim rests on the basis of respondeat superior, and not on an alleged

7

unconstitutional action of the government body itself, the plaintiff has failed to present a claim under Section 1983.  Id.

Monell held that a local government can be liable for damages under § 1983 only when the damages result from the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy."  Monell, 436 U.S. at 694; Polk County v. Dodson, 454 U.S. 312, 325 (1981).  Under Monell, Scotts Bluff County can be held liable under § 1983 if the plaintiff's damages resulted from a policy or custom of Scotts Bluff County.

For the purposes of § 1983 liability, a local government policy or custom may be based on:  1) a "policy statement, ordinance, regulation or decision officially adopted and promulgated" by a law-making body (see Monell, 436 U.S. at 690; Saint Louis v. Praprotnik, 485 U.S. 112, 123 (1988)); 2) a single act or edict of a local official with final policymaking authority (Pembaur v. Cincinnati, 475 U.S. 469, 480-81 (1986); Praprotnik, 485 U.S. at 123); or 3) a custom or practice that may be so widespread as to constitute a de facto policy of the local governing body, even if it was never formally approved.  Monell, 436 U.S. at 690-91, 694 (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 167-68 (1970)).

The plaintiff has not alleged that Scotts Bluff County adopted or promulgated any formal policy statement permitting or even addressing the use of force (excessive or otherwise) when carrying out law enforcement functions.  Rather, the plaintiff claims he was injured during one incident where Perkins allegedly used excessive force.  A single act of a county employee can create county liability only if the employee who committed the

act was an official who possessed final policymaking authority with respect to that issue.  Pembaur, 475 U.S. at 480-81.  State law determines whether or not an official possesses such final policymaking authority.  Pembaur, 475 U.S. at 483.

Under Nebraska law, county sheriffs are not authorized to adopt policies on behalf of their jurisdictional counties with regard to the use of force in investigating, apprehending, or arresting criminal suspects.  Such policies and procedures are determined and guided by the Nebraska Legislature and agencies of the State of Nebraska.  See Neb. Rev. Stat. §§ 23-103 through 23-145 and 23-1701 through 1737.  County law enforcement officers, such as defendant Perkins, are bound by state law to exercise only those powers and duties "conferred and imposed upon him or her by other statutes and by the common law," including the duty to "apprehend, on view or warrant, and bring to the court all felons and disturbers and violators of the criminal laws of this state, to suppress all riots, affrays, and unlawful assemblies which may come to his or her knowledge, and generally to keep the peace in his or her proper city."  Neb. Rev. Stat. §§ 23-1701.02 & 23-1701.03.

Deputy Sheriff Perkins was charged with keeping the peace, apprehending and arresting violators of the law, and pursuing prosecution of those who have violated state law pursuant to policies set by the state legislature.  The "implementation of these policies by a municipal official does not constitute formulation by a final policy-making body sufficient to impose liability upon the municipality."  Poor Bear, 300 F. Supp. 2d at 917 (Kopf, J.)(applying Nebraska law).  "In short, a 'county sheriff acts pursuant to state-enacted restrictions in enforcing the criminal laws of Nebraska and is not himself a policy maker

9

for the county for which he is sheriff.'" Poor Bear, 300 F. Supp. 2d at 917 (quoting Branting v. Schneiderheinz, 1996 WL 580457, at *3 (D. Neb. 1996)(Urbom, J.)(applying Nebraska law).

Perkins was not a local official with final policymaking authority with respect to the using force to carry out his law enforcement duties. Accordingly, Scotts Bluff County, as a government entity, is not subject to § 1983 liability on that basis for Perkins' alleged use of excessive force when apprehending the plaintiff. "Proof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker. City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 (1985)

The plaintiff's allegations can, however, be construed to allege a continuing, widespread, persistent pattern of unconstitutional misconduct by Scotts Bluff County law enforcement officers such that a de facto policy permitting excessive force was created, even if never formally approved by the county. Though the plaintiff alleges Scotts Bluff County inadequately trained, hired, and supervised its law enforcement officers, it is questionable whether these alleged "customs and policies" are sufficient to impose liability on the county for Perkins' alleged unconstitutional conduct. Tuttle, 471 U.S. at 824. However, the plaintiff also alleges that Scotts Bluff County "established through tacit authorization and explicit instruction a policy or custom of allowing deputy sheriffs to commit uses of excessive force," this policy "was enacted and enforced with deliberate indifference to the constitutional rights of citizens effected thereby," (filing 1 (complaint) at ¶

10

10), and the county has a "custom and policy of allowing excessive force."  Filing 1 (complaint) at ¶ 13.  If the plaintiff proves a continuing, widespread, persistent pattern of unconstitutional misconduct by the Scotts Bluff County Sheriff's Department; deliberate indifference or tacit authorization of such misconduct by county policymakers after notice of such misconduct; and that this objectionable pattern or custom of misconduct was the moving force behind the Perkins' alleged misconduct, the county itself may be liable under § 1983 for Perkins' conduct.  Mettler v. Whitledge  165 F.3d 1197, 1204 (8th Cir. 1999).  See also Memphis, Tennessee Area Local, American Postal Workers Union, AFL-CIO v. City of Memphis, 361 F.3d 898, 903 (6th Cir. 2004); Fundiller v. City of Cooper City, 777 F.2d 1436, 1443 (11th Cir. 1985).

The plaintiff faces no heightened pleading standard in alleging liability under § 1983.  To state a claim under section 1983 against a political subdivision, a plaintiff must allege an act performed under color of state law that resulted in a constitutional injury, and must identify either an official policy or a widespread custom or practice of the political subdivision that provided the moving force behind the unconstitutional act and the plaintiff's resulting injury. Springdale Educ. Ass'n v. Springdale Sch. Dist., 133 F.3d 649, 651 (8th Cir. 1998).

In this case, the plaintiff has alleged that Perkins, as an officer of the Scotts Bluff County Sheriff's Department and acting under color of state law, used excessive force against the plaintiff in violation of plaintiff's Fourth Amendment rights, and that such conduct was consistent with and caused by the custom and policy of Scotts Bluff County to permit such

11

constitutional violations. Accepting these allegations as true for the purposes of this motion, (see <u>Parnes v. Gateway 2000, Inc.</u>, 122 F.3d 539, 545-546 (8th Cir. 1997), I conclude the defendants' Rule 12(b)(6) motion to dismiss plaintiff's claim against Scotts Bluff County must be denied.

    3.    Fifth and Fourteenth Amendment Claims: Substantive Due Process.

The defendants have moved for an order requiring the plaintiff to more definitely and certainly state the basis of his Fifth and Fourteenth Amendment claims. Upon reading the complaint, I conclude the plaintiff has failed to adequately allege a § 1983 claim for violating his substantive due process rights.

The plaintiff's complaint alleges he was engaged in a dispute with a third party when Perkins, acting in the course and scope of his employment as a Deputy Sheriff, contacted the plaintiff near the Scotts Bluff County Fairgrounds. The plaintiff claims Perkins unreasonably seized him; Perkins was reckless, grossly negligent, and deliberately used excessive force while carrying out his law enforcement duties; that such conduct reflects deliberate indifference for the plaintiff's rights; and as a result, the plaintiff injured his knee.[2]

---

[2]The plaintiff does not allege that he was held and later tried for any offense (other than claiming a right to recover amounts paid for his defense), he raises no allegations concerning treatment received while a pretrial detainee, and he does not claim he was injured while a convicted prisoner. The Due Process Clause protects a <u>pretrial detainee</u> from the use of excessive force that amounts to punishment. <u>Graham</u>, 490 U.S. at 395 n. 10 (citing <u>Bell v. Wolfish</u>, 441 U.S. 520, 535-539 (1979). <u>After conviction</u>, the Eighth Amendment is the source of substantive protection in cases where the deliberate use of force is challenged as excessive and unjustified, and any protection

12

Filing 1 (complaint) at ¶¶ 3-6, 12, 21.  The defendants argue that such facts do not sufficiently allege a substantive due process violation, and they therefore request an order requiring the plaintiff to make his complaint more definite and certain with respect to this claim.  The plaintiff responds that "[i]f for some reason this Court holds at some point that WILLIAMS was not seized when PERKINS physically assaulted him, we would wish to retain our options to pursue a Due Process violation under an alternative theory such as the Fourteenth Amendment, see, e.g., Graham v. Connor, 490 U.S. 386 (1989)."

"The first step in a § 1983 analysis is 'to isolate the precise constitutional violation' which is alleged." Rogers v. City of Little Rock, Ark., 152 F.3d 790, 796 (8th Cir. 1998)(quoting Baker v. McCollan, 443 U.S. 137, 140 (1979)).  If a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process. United States v. Lanier, 520 U.S. 259, 272 n. 7 (1997) (interpreting Graham v. Connor, 490 U.S. 386 (1989)).

A substantive due process claim requires proof of "abusive conduct by a state actor" that is "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." County of Sacramento v. Lewis  523 U.S. 833, 847 n. 8 (1998). Allegations that an officer was reckless, grossly negligent, exercised conscious disregard, or was deliberately indifferent to

---

against excessive force afforded under the Due Process Clause to convicted prisoners is redundant of that provided by the Eighth Amendment.  Graham, 490 U.S. at 395 n. 10 (citing Whitley v. Albers, 475 U.S. at 327).

the plaintiff's safety or survival are insufficient to support a § 1983 claim for violating a plaintiff's substantive due process rights.  County of Sacramento, 523 U.S. at 854.  Moreover, the acts allegedly committed by Perkins, as set forth in the plaintiff's complaint, fall far short of presenting a cognizable claim of official conduct which "shocks the conscience."

The plaintiff's complaint alleges Perkins used excessive force against the plaintiff when, in the course and scope of his employment, the officer responded to a dispute between the plaintiff and a third person.  As such, the source of plaintiff's constitutional protection is the Fourth Amendment, not the Fifth or Fourteenth Amendment Due Process Clauses.  Graham held:

> [A]ll claims that law enforcement officers have used excessive force--deadly or not--in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard, rather than under a "substantive due process" approach. Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.

Graham, 490 U.S. at 395 (emphasis in original).

However, the plaintiff wishes to retain his substantive due process allegations as a contingency plan; a method of pursuing recovery even if he is ultimately unable to prove a Fourth Amendment "seizure."  The court is unwilling to allow the plaintiff to retain a "moving target" alternative position during the course of this litigation without adequately alleging the claim at the outset.  The plaintiff's complaint states Perkins

14

violated his Fifth and Fourteenth Amendment rights, and presumably the plaintiff had a factual basis for raising these allegations. Though the plaintiff appears to be arguing that discovery is needed to fully determine the basis of these claims, any evidence supporting a claim of conscience-shocking behavior inflicted on the plaintiff was known by the plaintiff and/or readily ascertainable at the outset of this suit even in the absence of formal discovery. The plaintiff's complaint does not currently state a Fifth and Fourteenth Amendment substantive due process claim, and the defendant has requested an order requiring more definite and certain allegations of that claim. The defendant's request will be granted and the plaintiff afforded an opportunity to amend his complaint to properly allege a substantive due process claim.

4. State Law Theories of Recovery.

The defendants have moved to dismiss any state law claims which may be encompassed within the allegations of the plaintiff's complaint. They claim the plaintiff cannot pursue such recovery because he failed to allege compliance with the Nebraska Political Subdivision Tort Claims Act. The plaintiff claims he is not "bringing a cause of action under the Nebraska Political Subdivisions Tort Claims Act," . . . and as such, "it does not appear there is anything for this court to dismiss." Filing 11 at p. 7.

The plaintiff's response indicates he does not intend to pursue state law claims in this forum. However, but for failing to allege compliance with the Nebraska Political Subdivision Tort Claims Act, the allegations of the plaintiff's complaint could support theories of recovery under Nebraska law. The plaintiff's

claims are determined by the allegations, and not the label used to identify them in the complaint. The defendants' attempt to frame the issues of this case at the outset and limit the theories of recovery presented was warranted.

Moreover, the defendants' arguments are fully supported by the law. The Tort Claims Act is the exclusive means by which a tort claim may be maintained against a Nebraska political subdivision or its employees. Keller v. Tavarone, 262 Neb. 2, 628 N.W.2d 222, 230 (Neb. 2001). Neb. Rev. Stat. § 13-920(1) states:

> No suit shall be commenced against any employee of a political subdivision for money on account of . . . personal injury to ... any person caused by any negligent or wrongful act or omission of the employee while acting in the scope of his or her office or employment ... unless a claim has been submitted in writing to the governing body of the political subdivision within one year after such claim accrued.

"While not a jurisdictional prerequisite, the filing or presentment of a claim to the appropriate political subdivision is a condition precedent to commencement of a suit under the Tort Claims Act." Jessen v. Malhotra, 266 Neb. 393, 665 N.W.2d 586, 590 (Neb. 2003). Failure to file such notice deprives the political subdivision of the opportunity to evaluate whether to settle the claimant's claim or defend itself in litigation. Jessen, 665 N.W.2d at 591.

The plaintiff alleges Perkins was employed by Scotts Bluff County and was acting within the course and scope of that employment when he injured the plaintiff. As such, the plaintiff was required to comply with the Nebraska Political Subdivisions Tort Claims Act with respect to any state law claim he may be

16

pursuing against Scotts Bluff County or Perkins in his official and individual capacities. Stagemeyer v. County of Dawson, 205 F. Supp. 2d 1107, 1118-19 (D. Neb. 2002)(Kopf, J.). To the extent that plaintiff's complaint would otherwise include state law claims against the defendants, such claims must be dismissed for failure to allege compliance with the Nebraska Political Subdivisions Tort Claims Act.

   5.   Striking Damage Allegations, Requests for "Equitable Relief," and References to the Use of Deadly Force.

The defendants have moved to strike plaintiff's damage claims for "sociological distress" and "special damages associated with defending criminal charges," and his allegation concerning the use of "deadly force." Federal Rule of Civil Procedure 12(f) permits the court to strike "from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

"Sociological distress" and "special damages associated with defending criminal charges" are not listed elements of damage in the Eighth Circuit's Model Jury Instructions for § 1983 claims, and the plaintiff has cited no case which permitted recovery for either of these types of damages in a § 1983 action. The plaintiff has not alleged a malicious prosecution suit, the type of suit typically pursued for recovery of damages associated with defending criminal charges. Even had he alleged malicious prosecution, the plaintiff has not alleged compliance with the Nebraska Political Subdivision Tort Claims Act as required for pursuing this state law claim, and it is well established in this circuit that "[a]n action for malicious prosecution by itself is not punishable under § 1983 because it does not allege a

17

constitutional injury." Pace v. City of Des Moines, 201 F.3d 1050, 1055 (8th Cir. 2000).

While I question whether damages for "sociological distress" and the costs of "defending criminal charges" are recoverable under § 1983, I will not strike the allegations at this time. The question of whether these damage claims are compensable can be better analyzed upon an evidentiary showing and a thoroughly briefed record on motion for summary judgment or motion in limine, or during the course of the pretrial conference or trial.

The plaintiff has also requested recovery of "equitable relief" as may be appropriate. This phrasing is commonly, though not appropriately, used in pleadings. If the plaintiff has a specific request for equitable relief, it should be alleged, thereby affording the defendants notice and the opportunity to respond. A general request for equitable relief should be stricken.

Finally, the defendants have also moved to strike the plaintiff's allegation that Perkins used "deadly force," arguing that the evidence does not support this claim. The plaintiff's allegations reference the county's duty to promulgate and enforce rules and regulations related to the use of excessive and deadly force, and Perkins' duty not to use excessive or deadly force during his encounter with the plaintiff. The complaint does not actually state that deadly force was used. Moreover, to strike the "deadly force" references because they are factually unsupported, the court would be required to review evidence outside the pleadings--the inquiry performed on a motion for summary judgment and not a motion to strike.

18

IT THEREFORE HEREBY IS ORDERED: The defendants' "Rule 12(b)(6) Motion," filing 7, is granted in part and denied in part as follows:

1. The defendants' motion to dismiss the plaintiff's damage claims under 42 U.S.C. § 1983 against the County of Scotts Bluff is denied. Defendant's motion to dismiss plaintiff's claim for damages against Deputy Jason Perkins in his official capacity is granted.

2. The defendants' motion to dismiss state law claims encompassed within the allegations of the plaintiff's complaint is granted.

3. The defendants' motion to make more definite and certain the allegations underlying the plaintiff's substantive due process claim is granted. The plaintiff is given until December 12, 2005 to file an amended complaint which sufficiently alleges a substantive due process claim, in the absence of which that claim will be deemed abandoned.

4. Plaintiff's claim for general equitable relief is stricken.

5. Defendants' requests to strike plaintiff's claim for "sociological distress" and "special damages associated with defending criminal charges," and to strike references to "deadly force" in the complaint, are denied.

DATED this 28th day of November, 2005.

BY THE COURT:

s/ *David L. Piester*
David L. Piester
United States Magistrate Judge